UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEMAJIO JEROME ELLIS, <br><br> Plaintiff, <br><br> v. <br><br> IDOC, et al., <br><br> Defendants. | CAUSE NO. 3:25-CV-1051-GSL-JEM |

OPINION AND ORDER

Demajio Jerome Ellis, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 2.) Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). A claim has facial plausibility when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Ellis is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

BACKGROUND

Ellis is an inmate at Miami Correctional Facility (MCF) who alleges that he is being denied proper medical care. His complaint is difficult to decipher, but it can be

discerned that he claims to have chronic conditions resulting in pain, numbness, and lack of mobility in his back, knees, ankles, shoulder, and neck. He claims to need a walker or wheelchair and states that he has been denied these mobility aids since arriving at MCF in May 2025. He also previously broke his nose, which he claims is causing sleep apnea, problems with his sinuses, and other symptoms. He was seen by an ear, nose, and throat specialist and claims he was supposed to go back for follow-up but has not been scheduled. He also claims he has been denied regular access to an inhaler, sleep apnea machine, and other supplies that he uses to manage his symptoms. He claims that he suffers from angina and hypertension but has been denied nitroglycerin tablets. He additionally claims that he has mental health problems including depression, anxiety, and paranoia, for which he is not receiving proper care. Based on these issues, he seeks monetary damages and injunctive relief.

ANALYSIS

The Eighth Amendment prohibits cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for the denial of medical care under the Eighth Amendment, a prisoner must allege (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). Inmates are "not entitled to demand

specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). In effect, the Eighth Amendment protects prisoners from "grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019).

Giving Ellis the inferences to which he is entitled at this stage, he has alleged a serious medical need in connection with his physical and mental impairments. On the second prong, his complaint can be read to allege that his medical providers—Nurse Sherry (last name unknown), Ms. McAmis, Ms. Rivals, Ms. Ivers, Dr. Myers, Dr. Kuenzli, Nurse Scott, Ms. Fairchild, Ms. Rodgers, and Ms. Ballard (first names unknown)—are all aware of his physical and mental impairments but have turned a blind eye to his needs, causing him pain and suffering. He further alleges that Warden Brian English, Unit Team Manager Nathan Angle, Classification Specialist Worden (first name unknown), and Counselor Hurshburger (first name unknown) have denied him mobility aids and a bottom range pass, making it difficult for him to access showers and other areas of the prison.[1] *Echols v. Illinois Dep't of Corr.*, No. 3:20-CV-00583-GCS, 2021

---

[1] He lists an additional counselor as a defendant, Ms. Murray (first name unknown), but does not clearly explain how, if at all, she was involved in these events. His allegations about "defendants"

3

WL 25359, at *3 (S.D. Ill. Jan. 4, 2021) (denial of "prosthetic leg or any other mobility aid" stated claim for violation of Eighth Amendment's prohibition on cruel and unusual punishment). Ellis has alleged enough to proceed further on a claim for damages against these individuals under the Eighth Amendment.

Ellis also claims to have ongoing medical concerns that are not being adequately addressed. The Warden has both the authority and the responsibility to ensure that inmates at his facility are provided medical care to address serious medical needs as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Ellis will be allowed to proceed on claim against the Warden in his official capacity for prospective injunctive relief under the Eighth Amendment.

Ellis states that he is also pursuing a claim under the Americans with Disabilities Act ("ADA"). Title II of the ADA provides that qualified individuals with disabilities may not "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. "Disability" in this context means: "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." *Steffen v. Donahoe*, 680 F.3d 738, 743 (7th Cir. 2012) (citation and internal alteration omitted). When an inmate seeks damages, the Seventh Circuit has suggested replacing a prisoner's ADA claim with a parallel claim under the Rehabilitation Act given the uncertainty about the availability of damages

---

collectively do not suffice to assert a claim against this defendant. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (allegations that referred to "defendants" collectively without connecting specific defendants to specific acts were insufficient under federal pleading standards). She will be dismissed as a defendant.

4

under Title II. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012). Relief under these two statues is coextensive. *Id.* To allege a claim under the Rehabilitation Act, a plaintiff must allege that (1) he is a qualified person (2) with a disability and (3) the defendant denied him access to a program, service, or activity because of his disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015).

Ellis does not plausibly allege that he is being denied services *because* of a disability. Rather, he describes not being given proper care and supplies *for* his impairments. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[I]t would be extremely odd to suppose that disabled persons whose disability is treated negligently have a [] claim by virtue of the Americans With Disabilities Act."); *Perrey v. Donahue*, No. 3:06-CV-617, 2007 WL 4277621, at *4 (N.D. Ind. Dec. 3, 2007) (claim for inadequate medical treatment is improper under the ADA and the Rehabilitation Act, and instead the proper avenue is the Eighth Amendment). He will not be permitted to proceed under these federal statutes.

Ellis also asserts state law claims of negligence and intentional infliction of emotional distress. To the extent he is asserting these claims against his medical providers, his claim is in substance one for medical malpractice notwithstanding the label he placed on it. *See Terry v. Cmty. Health Network, Inc.*, 17 N.E.3d 389, 393-94 (Ind. Ct. App. 2014). A medical malpractice claim must be submitted to a medical review panel before it can be brought in court, and there is no indication Ellis complied with this requirement. *See* Ind. Code § 34–18–8–4. State law claims asserted against the Warden and other Indiana Department of Correction (IDOC) employees trigger

application of the Indiana Tort Claims Act. Ind. Code § 34-13-3 *et seq*. "Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment." *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014). It is evident from Ellis' allegations that these individuals were acting within the scope of employment at the IDOC during these events. The Tort Claims Act protects them from being sued for their actions.

Ellis also sues the IDOC itself, but this claim cannot proceed because a state agency is not a "person" that can be sued for constitutional violations under 42 U.S.C. § 1983.[2] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63 (1989); *Johnson v. Sup. Ct. of Ill.*, 165 F.3d 1140, 1141 (7th Cir. 1999). He also sues IDOC Commissioner Lloyd Arnold, but the court cannot infer from his allegations that this high-ranking state official had any personal involvement in these events. The Commissioner cannot be held liable for damages solely because of his position. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

Ellis also sues Centurion Health, a private company that employs medical providers at the prison. A private company performing a public function can be held liable under *Monell*, but only if the unconstitutional acts of their employees "were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of this requirement is to "distinguish

---

[2] To the extent he named the IDOC in connection with his state law claims, a claim for damages against IDOC is barred by the Eleventh Amendment in federal court. *Burrus v. State Lottery Comm'n of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008) ("[A]n unconsenting State is immune from suits brought in federal courts by her own citizens[.]").

between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). Thus, to allege a viable *Monell* claim, the plaintiff must identify an official corporate policy that caused him injury. *Grieveson*, 538 F.3d at 771. Alternatively, a plaintiff pursuing an official custom theory "must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a [corporate] custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Ellis mentions the words "policy" and "practice" several times in his complaint but does not clearly allege what the policy or practice was that caused him injury. He appears to state there are often delays in receiving medical care at the prison, but the only events he describes relate to his own care. He does not provide factual content from which the court could plausibly infer the existence of a practice widespread or custom that violates the Constitution. Instead, his allegations suggest individual failings by a handful of providers. Merely "putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened . . . that *might* be redressed by the law" is not enough to state a claim under federal pleading standards. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010).

Finally, Ellis asserts a claim against a correctional officer who allegedly left him in a cell that flooded with toilet water, causing him to slip and fall. Prisoners cannot combine unrelated claims against unrelated defendants in one lawsuit. *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). As the Seventh Circuit has explained:

7

> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George*, 507 F.3d at 607. The Seventh Circuit has urged district courts to be alert to this issue to "ensure manageable litigation" and to prevent prisoners from avoiding the provisions of the Prison Litigation Reform Act (PLRA), including the filing fee and three-strike provisions. *Henderson v. Wall*, No. 20-1455, 2021 WL 5102915, at *1 (7th Cir. Nov. 3, 2021).

The court does not find Ellis' claim against a correctional officer stemming from the slip-and-fall incident sufficiently related to his claims about his medical care to proceed in the same lawsuit. It would be particularly unworkable to try to litigate these discrete claims together given that Ellis claims to have pressing medical needs that must be addressed promptly. If he wishes to pursue this unrelated claim, he must do so in a separate lawsuit subject to the usual constraints of the PLRA.[3]

## MOTION FOR PRELIMINARY INJUNCTION

Ellis separately moves for a preliminary injunction. (ECF 4.) He includes a laundry list of requests including a reassignment to the infirmary, an order requiring IDOC to designate him as disabled, a "full body MRI/ CAT scan," "day time showers,"

---

[3] According to Ellis, the slip-and-fall incident occurred in August 2025. (ECF 2 at 10.) If he acts diligently, he should have sufficient time to assert this claim in a new lawsuit before the expiration of the two-year limitations period. *See Dorsey v. Varga*, 55 F.4th 1094, 1107 (7th Cir. 2022) (court may dismiss unrelated claims "if doing so will not prevent the plaintiff from timely refiling those claims").

8

a "double mattress, pillow and cushion," and a working call button in his cell. (*Id.* at 1-3.)

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must endeavor to assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff

9

is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting). The court also must consider the Supreme Court's admonition that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Ellis' motion can be understood as asserting that he needs immediate medical care and supplies for serious medical conditions. However, many of his requests appear to go beyond what is necessary to address his urgent medical needs. Furthermore, at present the court only has his version of events, and his own subjective assessment of his medical needs does not establish an Eighth Amendment violation. *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019). It is difficult to determine on this limited record whether he has a likelihood of success in proving an Eighth Amendment violation. In light of the deference owed to prison medical providers and the limitations on granting

10

injunctive relief in the prison setting, the court will order the Warden to respond before taking further action on Ellis' motion for a preliminary injunction.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Nurse Sherry (last name unknown), Ms. McAmis, Ms. Rivals, Ms. Ivers, Dr. Myers, Dr. Kuenzli, Nurse Scott, Ms. Fairchild, Ms. Rodgers, Ms. Ballard (first names unknown), Warden Brian English, Unit Team Manager Nathan Angle, Classification Specialist Worden (first name unknown), and Counselor Hurshburger (first name unknown) in their personal capacity for money damages for denying him medical care, supplies, and a bottom range pass in violation of the Eighth Amendment;

(2) GRANTS the plaintiff leave to proceed against the Warden of Miami Correctional Facility in his official capacity for injunctive relief to remedy an alleged Eighth Amendment violation;

(3) DISMISSES the plaintiff's claim against Mr. Jose as unrelated;

(4) DISMISSES Ms. Murray, Commissioner Lloyd Arnold, IDOC, and Centurion Health as defendants;

(5) DISMISSES all other claims;

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Warden of Miami Correctional Facility by email to the Indiana Department of Correction with a copy of this order, the complaint (ECF 2), and the motion for a preliminary injunction (ECF 4) pursuant to 28 U.S.C. § 1915(d);

(7) DIRECTS the clerk to fax or email a copy of the same documents to the Warden of Miami Correctional Facility at Miami Correctional Facility;

(8) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Unit Team Manager Nathan Angle, Classification Specialist Worden (first name unknown), and Counselor Hurshburger (first name unknown) at Indiana Department of Correction and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(9) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Nurse Sherry (last name unknown), Ms. McAmis, Ms. Rivals, Ms. Ivers, Dr. Myers, Dr. Kuenzli, Nurse Scott, Ms. Fairchild, Ms. Rodgers, and Ms. Ballard (first names unknown) at Centurion Health and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(10) ORDERS the Indiana Department of Correction and Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(11) ORDERS the Warden to file and serve a response to the plaintiff's motion for a preliminary injunction no later than **January 20, 2026**, with supporting documentation and declarations from staff as necessary, addressing the plaintiff's current medical needs and the steps being taken to address those needs; and

(12) ORDERS the Warden, Unit Team Manager Nathan Angle, Classification Specialist Worden (first name unknown), Counselor Hurshburger (first name unknown), Nurse Sherry (last name unknown), Ms. McAmis, Ms. Rivals, Ms. Ivers, Dr. Myers, Dr. Kuenzli, Nurse Scott, Ms. Fairchild, Ms. Rodgers, and Ms. Ballard (first names unknown) to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on December 18, 2025

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT